IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MARIO CORTES-NUTE,

                Plaintiff,

   v.                                                                           OPINION and ORDER

SERGEANT ZBARACKI, RODDERICK KLUG,                   23-cv-577-jdp
JENNA PARKS, and MARIO CANZIANI,

                Defendants.

---

Plaintiff Mario Cortes-Nute, appearing without counsel, is currently incarcerated at Jackson Correctional Institution. Cortes-Nute alleges that when he was at Stanley Correctional Institution, defendant prison officials confiscated his radio without a proper reason. I granted him leave to proceed on claims under Fourteenth Amendment due process and Wisconsin-law conversion theories. Defendants move for summary judgment. Dkt. 13. I will grant that motion as it pertains to Cortes-Nute's federal-law due process claims. I will relinquish the court's supplemental jurisdiction over his state-law claims.

UNDISPUTED FACTS

I draw the following facts from the parties' proposed findings of fact and supporting evidence. These facts are undisputed unless otherwise noted.

Plaintiff Mario Cortes-Nute is a prisoner in the custody of the Wisconsin Department of Corrections. During the events relevant to this case he was incarcerated at Stanley Correctional Institution. Defendants all worked at SCI: Mario Canziani was the deputy warden, Jenna Parks was a lieutenant, John Zbaracki was a sergeant, and Rodderick Klug was a correctional officer.

On January 17, 2023, defendant Klug conducted security rounds on Cortes-Nute's unit. He could hear music coming from Cortes-Nute's cell. Klug told defendant Sergeant Zbaracki that he believed that Cortes-Nute or his roommate was using an auxiliary cord to play music from their tablet to their radio, using the radio speakers. Zbaracki asked the inmates to hand over the auxiliary cord. Cortes-Nute's cellmate handed over a cord to Zbaracki, stating that it was his. Zbaracki and Klug looked over the cord and noticed that it had been physically altered. Alteration of an inmate's property "contrary to department policy" violates DOC regulations. Wis. Admin. Code § DOC 303.38. When questioned by Zbaracki, Cortes-Nute's cellmate stated that he found the cord on the walking track.

Klug returned to the cell to retrieve the radio because he believed that it had also been altered. Cortes-Nute became argumentative, stating that it was his radio and it did not have anything to do with his cellmate. Klug told Cortes-Nute that he would still need to send the radio to be reviewed for alterations. Cortes-Nute handed the radio to Klug.

Inspection of the radio showed what defendants believed was a non-factory auxiliary plug installed after the radio had come into the prison. Klug issued Cortes-Nute a conduct report for possession of contraband, damage or alteration of property, and disobeying orders. Cortes-Nute contested the conduct report, stating in part that "This radio is in the working manner from the company I had bought it from, any feature on my radio is the factory features." Dkt. 20-1, at 4. Cortes-Nute also submitted a receipt that he says showed that he had previously gotten a DOC-approved vendor to add an auxiliary input jack on the radio.

Defendant Parks reviewed the conduct report, Cortes-Nute's statement, and the receipt, and she inspected the radio, concluding that it had been altered in violation of prison policy. Parks noted that another inmate's name or number had been removed from the radio and that

2

Cortes-Nute appeared to have engraved his own name onto the radio, in contravention of prison rules. The engraving led Parks to believe that Cortes-Nute had not purchased the radio. Parks found Cortes-Nute guilty of alerting his property and of disobeying orders. She found him not guilty of possession of contraband. Cortes-Nute received a disposition of five days of room confinement and he was ordered to dispose of the radio at his own expense.

Cortes-Nute appealed that decision. Non-defendant Captain Schacht recommended to affirm the decision; defendant Canziani affirmed the decision.

I will discuss additional facts as they become relevant to the analysis.

ANALYSIS

I granted Cortes-Nute leave to proceed on a Fourteenth Amendment due process claim that Parks and Canziani found him guilty of altering his property despite clear-cut evidence of his innocence, and on Wisconsin-law conversion claims against each defendant for depriving him of his radio. Defendants contend that they are entitled to summary judgment on all of these claims.[1] I'll start with Cortes-Nute's due process claims.

A. Due process claims

Deprivation of property claims are considered under the Due Process Clause of the Fourteenth Amendment. A procedural due process violation occurs when a state actor deprives an individual of a constitutionally protected interest in "life, liberty, or property" without providing adequate process. Therefore, "[t]o state a Fourteenth Amendment claim for the

---

[1] Defendants moved for a short extension of time to submit a declaration authenticating the documents that they cite in their motion for summary judgment. Dkt. 19. I will grant that motion and I will accept the declaration, Dkt. 20.

deprivation of a property interest without due process, a plaintiff must demonstrate that (1) he had a constitutionally protected property interest, (2) he suffered a loss of that interest amounting to a deprivation, and (3) the deprivation occurred without due process of law." *LaBella Winnetka, Inc. v. Village of Winnetka*, 628 F.3d 937, 943–44 (7th Cir. 2010). Defendants focus on the third prong: whether Cortes-Nute received due process.

As I stated in my order screening Cortes-Nute's complaint, the question of what process a prisoner is due in disciplinary hearings involving the loss of property is not well developed. Defendants argue that Cortes-Nute was entitled to only "informal, nonadversarial due process" because his proceedings didn't concern the loss of good-time credits. Dkt. 14, at 7 (citing *Ealy v. Watson*, 109 F.4th 958, 965 (7th Cir. 2024)). Cortes-Nute doesn't argue otherwise, so that's the standard that I will apply.

The court of appeals has explained what procedural safeguards an inmate is entitled to receive under this standard:

> Informal due process requires "some notice" of the reasons for the [disciplinary action], and enough time to "prepare adequately" for the administrative review . . . .
>
> . . . .
>
> In other words, only a single prison official is needed as the neutral reviewer—not necessarily a committee. Informal due process requires only that the inmate be given an "opportunity to present his views"—not necessarily a full-blown hearing. If the prison chooses to hold hearings, inmates do not have a constitutional right to call witnesses or to require prison officials to interview witnesses. . . . Nor does informal due process necessarily require "a written decision describing the reasons" for the decision, or mandate an appeal procedure.

*Westefer v. Neal*, 682 F.3d 679, 684–86 (7th Cir. 2012) (citations omitted). Prisoners are also entitled to an impartial decisionmaker. *Adams v. Reagle*, 91 F.4th 880, 896 (7th Cir. 2024) (St.

4

Eve, J., majority op.). And prison officials must "produce 'some evidence' of conduct that authorizes the deprivation." *Tonn v. Dittmann*, 607 F. App'x 589, 590 (7th Cir. 2015) (quoting *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 447 (1985)).

Defendants contend that Cortes-Nute's disciplinary proceedings included all of these safeguards: he was given notice of the reasons for his conduct report and an opportunity to present his views by submitting a written statement. They state that Parks was impartial because she wasn't involved in the underlying incident, and Parks explains the evidence she used to come to her decision: the radio had an auxiliary port added to it, Cortes-Nute had removed another inmate's name or number from the radio and engraved his own number instead, and the receipt that Cortes-Nute produced was not for the radio at issue.[2]

Cortes-Nute argues that he didn't receive the process he was due because Parks and Canziani only "rubber stamped" the conduct report rather than explaining the reasons for their decisions, and that Parks only now explains that part of the rationale for her decision was that Cortes-Nute had crossed out another inmate's identifying information and self-engraved his number. He states that Parks's failure to disclose this information directly in her ruling violated DOC regulations and that her conclusion was also incorrect: the receipt was indeed for the radio in question, he couldn't have tampered with the radio because it had a DOC tamper-proof sticker in place, and the conduct report explicitly stated, "The radio does belong to Cortes-Nute." Dkt. 20-1, at 4.

---

[2] Defendants argue that the engravings gave Parks another reason to find Cortes-Nute guilty of altering the radio, but that wasn't a basis for the conduct report so I will not consider that argument.

5

I'll reject Cortes-Nute's argument regarding the dearth of an explanation in Parks's conduct-report ruling because under the due process standards described above, Cortes-Nute didn't have a right to a written ruling explaining the precise reasons for his discipline. *See Westefer*, 682 F.3d at 686. And whether Parks fully complied with DOC regulations in making her ruling is irrelevant to whether she violated the Constitution. *See Pulera v. Sarzant*, 966 F.3d 540, 551 (7th Cir. 2020) ("a violation of a jail policy is not a constitutional violation enforceable under 42 U.S.C. § 1983").

Otherwise, Cortes-Nute's claim is premised on his disagreement with Parks's assessment of the evidence for him having altered the radio. But because due process demands only that Parks's decision (and Canziani's appellate decision) were supported by "some evidence," Cortes-Nute fails to stave off summary judgment. This is a "lenient standard requiring no more than a modicum of evidence." *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000), *as amended*, (Aug. 18, 2000) (internal citation and quotation omitted). "Even meager proof will suffice, so long as the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary." *Id.* (internal quotation omitted). Evaluating whether some evidence supports a disciplinary decision "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455–56.

The evidence against Cortes-Nute here meets this standard. Parks states that she reviewed the conduct report, examined the radio, and considered the receipt that Cortes-Nute gave her to support Cortes-Nute's assertion that he had properly had the radio altered by an outside vendor. But Parks concluded that the receipt wasn't for the radio at issue, and I note

6

that Cortes-Nute's assertion that he had the radio altered by an outside vendor contradicts the statement he submitted for the disciplinary proceeding in which he says that "any feature on my radio is the factory features." Dkt. 20-1, at 4. I take no position on whether Parks ultimately was correct that Cortes-Nute altered his radio. What matters to the due process claim is that there was at least some evidence supporting Cortes-Nute's guilt, which means that Cortes-Nute received the process that he was due. I will grant defendants' motion for summary judgment on this claim.[3]

## B. Conversion claims

Cortes-Nute also brings Wisconsin-law conversion claims against defendants Zbaracki, Klug, Parks, and Canziani. The court has supplemental jurisdiction over those claims under 28 U.S.C. § 1367(a), which permits a federal district court to hear a state-law claim if it is related to a federal claim in the same action. Cortes-Nute doesn't allege any other basis for federal jurisdiction over the state-law claims. Absent unusual circumstances, district courts will relinquish supplemental jurisdiction over state-law claims if all federal claims have been resolved before trial. *Coleman v. City of Peoria, Illinois*, 925 F.3d 336, 352 (7th Cir. 2019). Neither party identifies any unusual circumstances that would justify retaining jurisdiction over Cortes-Nute's state-law claims. I will relinquish jurisdiction over those claims.

Cortes-Nute may refile those claims in state court, subject to the applicable Wisconsin statute of limitations. Those limitations periods have been tolled while this case has been pending, but they will begin again 30 days from now. *See* 28 U.S.C. § 1367(d) ("The period of

---

[3] Defendants also contend that they are entitled to qualified immunity on Cortes-Nute's due process claims. Because I am dismissing those claims on the merits, I need not consider defendants' qualified immunity arguments.

limitations for any claim asserted under [the court's supplemental jurisdiction] . . . shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.").

ORDER

IT IS ORDERED that:

1. Defendants' motion for extension of time, Dkt. 19, is GRANTED.

2. Defendants' motion for summary judgment, Dkt. 13, is GRANTED with respect to plaintiff's due process claims.

3. Plaintiff's state-law claims are DISMISSED without prejudice under 28 U.S.C. § 1367(c)(3).

4. The clerk of court is directed to enter judgment accordingly and close this case.

Entered February 7, 2025.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge